# CASES

# COURT OF APPEALS OF GEORGIA

## MARCH TERM, 1914

---

### 5404. MORRIS *v.* THE STATE.

1. The mere fact that the female alleged to have been seduced subsequently contracted marriage with another than the alleged seducer does not afford a good defense to an indictment which charges the offense of seduction. Under the provisions of section 379 of the Penal Code a prosecution for seduction may be stopped before arraignment, by a bona fide and continuing offer.to marry on the part of the seducer, upon his compliance with the statutory requirement as to obtaining a marriage license and giving bond in such sum as may be required by the ordinary. But where it appears that the essential prerequisites have not been complied with and that the tender of marriage was made more than two years after the alleged seduction, it is not error to sustain a demurrer to a plea which merely sets up, as ground for abating the prosecution, the fact that the female alleged to have been seduced married another man, and that the defendant was thereby deprived of the right to stop the prosecution by marriage.

2. The court did not err in not defining the offense of fornication. The instruction to the effect that if the jury believed that the defendant and the prosecuting witness had sexual intercourse not induced by such persuasion and promises of marriage as would constitute the offense of seduction, the jury might inquire if the defendant was guilty of fornication, was sufficient; especially in view of the fact that the defendant insisted that he had never had sexual intercourse with the female alleged to have been seduced.

3. The evidence authorized the conviction of the accused, and, in the absence of any error of law on the trial, the verdict, approved by the trial judge, will not be set aside.

DECIDED MARCH 26, 1914.

Indictment for seduction; from Jeff Davis superior court—Judge Conyers. November 15, 1913.

*W. W. Bennett,* for plaintiff in error.

*J. H. Thomas, solicitor-general,* contra.

RUSSELL, C. J.   1.   The defendant was charged in the indictment with the offense of seduction.   Upon arraignment he filed a special plea in abatement, setting up the fact that the female alleged to have been seduced had married one Crawford, and upon this ground asked to be discharged.   The State demurred to this plea, and it was stricken by the court.   This raises the question (which so far as we are able to ascertain has not heretofore been adjudicated) whether the marriage of a female alleged to have been seduced bars the prosecution of the alleged seducer.   The trial judge held that the prosecution for seduction was not affected by the subsequent marriage of the female.   In our opinion there is no substantial reason why this ruling should be reversed.   It must be remembered that the act of seduction was penalized long before the enactment of the statute allowing a prosecution for seduction to be stopped by marriage.   The provision which allows a seducer to repair to some degree his wrong is an anomaly in the interest of social peace.   Under the terms of section 379 of the Penal Code the law provides a city of refuge for the seducer, not dissimilar to those which existed under the Mosaic law.   In the Biblical cities of refuge the slayer was safe if he reached the city of refuge before the avenger overtook him, but if he was overtaken the provision for a city of refuge was of no avail to him. And so in a case of seduction; the case is even stronger; for while the provisions allowing marriage may relieve the seducer from the pains and penalties of law, the statute was primarily designed in the interest of the injured female, and of helpless and hapless offspring.   The privilege conferred by section 379, so far as the seducer is concerned, is a right only in a qualified sense, for it savors more of the characteristics of a pardon, which is not matter of right, but matter of grace.   Of course, cases may be imagined where the female alleged to have been seduced might marry so quickly as to deprive one accused of seduction of the privilege of offering marriage as a means of stopping the prosecution.   In such a case there might be involved some question as to the bona fides of the offer, which should be submitted to a jury.   However, such is not the present case.   In the present case the indictment charged that the offense was committed on the first day of May, 1911.   The injured female married in July, 1912, and thus put it beyond the power of the defendant to contract marriage with her.   Any other

construction of the provisions of section 379 than that given by the trial judge would impose upon the injured female the necessity of remaining single at the pleasure of the seducer until she could ascertain, when the State finally succeeded in arraigning him for trial, whether he was willing to make her an offer of marriage; and this would be manifestly unreasonable. The defendant has the privilege of offering to marry only if the marriage can be legally consummated; and if he delays his proffer of marriage until it is too late, because the female has married, his condition would be the same as if he had already married at the time of the alleged seduction, or as if he had married some one else subsequently to the seduction. The law does not contemplate the doing of impossible things, nor regard as of any effect the tender of doing that which is legally impossible; and that there is an implication, in the provisions of section 379, that the offer mentioned therein shall be an offer to perform a marriage legally possible, if not plainly to be seen, is at least inferable from the express provisions of section 372, allowing the prosecution and punishment of adultery and fornication to be similarly "prevented or suspended" by the marriage of the parties, "if such marriage can be legally solemnized." So we think the court properly sustained the demurrer to the plea.

While the question was one wholly of law, the facts which later developed upon the trial in the present case show that it would not be a safe rule in any case to hold that, merely because the female who has been seduced has subsequently thereto contracted marriage, the prosecution should be barred and the offender obtain remission for his sin. The testimony of the sheriff, which is undisputed, is that he had a warrant for the defendant's arrest placed in his hands shortly after the September term, 1911, and that, though he endeavored to execute the warrant, the accused was not to be found in Jeff Davis county, and his whereabouts could not be ascertained. The accused voluntarily surrendered himself more than two years after the commission of the offense; and (according to his own statement) he did not surrender himself until after he had been told by his father that the female alleged to have been seduced had married, and therefore, he knew that his tender of marriage was a mere mockery. The bona fide and continuing offer to marry which by law stops a prosecution for seduction must be an offer which is capable of being legally performed; otherwise it affords no defense

to one accused of seduction. And since this provision has its origin in mercy rather than in the strict justice of the law, it is available only while the accused is still on mercy's ground.

2. One of the points presented by the motion for a new trial is that the judge erred in not defining to the jury the offense of fornication. It is doubtful if any reference whatever to the offense of fornication was required in the present case. The issue between the State and the accused was clear cut. The defendant asserted that never at any time or place or under any circumstances had he had sexual knowledge of the prosecutrix. Certainly, therefore, the court was not required to instruct the jury in reference to fornication, unless the evidence of the prosecutrix would have authorized an instruction upon that subject; and to our minds it did not. Counsel for the plaintiff in error rely upon the ruling of the Supreme Court in the case of *Cherry* v. *State,* 112 *Ga.* 871 (38 S. E. 341). In *Jinks* v. *State,* 114 *Ga.* 430 (40 S. E. 320), the ruling in *Cherry's* case was explained, and as we understand all of the rulings of the Supreme Court upon the subject, the rule is that if the female consents to intercourse solely in consideration of a promise to marry, it is nothing more than a meretricious bargain, but if she yields her person to one whom she is engaged to marry, influenced not so much by the present promise of marriage as by the previous relation and her love for her fiancé, in whose plighted troth she confides, and to accommodate whose importunities she yields, the offense of seduction is complete. In other words, seduction is based upon the confidence and affection which the engagement has engendered, whereas intercourse upon the mere prospect of an engagement, or a promise to marry, is mere fornication. The jury were authorized in the present case to find that the parties had been engaged for a considerable length of time; and while, as was held in the *Jinks* case, supra, it was immaterial whether a date had been set for the marriage, the prosecuting witness testified that Christmas had been selected as the date for the approaching nuptials in this case. The prosecutrix, according to her testimony, was not only the affianced wife of the accused, but she had additional reason to be deceived, from the fact that he had been her preceptor and she his pupil. The jury, if they believed the statement of the accused, were obliged to discredit the prosecutrix entirely. If they believed the prosecutrix, she did not yield her person to her

affianced husband until he had on many occasions insisted that his desire be gratified; and as the jury had the right to believe that Christmas day had been fixed as the date for the wedding, the statement that if anything happened from the intercourse, the accused would marry his intended sooner, and as soon as he could build a house, which otherwise might have been significant as indicating that the transaction was meretricious, loses its importance.

3. As above stated, the evidence authorized the finding of the jury, and there were no errors upon the trial. The jury's finding, having been approved by the trial judge, who saw and heard the witnesses upon the single issue of fact, will not be disturbed.

*Judgment affirmed. Roan, J., absent.*